ADORABLE COAT CO., INC., Appellant-Respondent, v CONNECTI-
CUT INDEMNITY COMPANY, Respondent-Appellant.

First Department, May 31, 1990

**APPEARANCES OF COUNSEL**

*Evan Sarzin* of counsel *(Benjamin Zalman* with him on the brief; *Zalman & Schnurman,* attorneys), for appellant-respondent.

*Steven H. Beldock* of counsel *(Deitsch, Goldberg, Cohen &*

*Marin* [successors to *Bell, Kalnick, Klee & Green]*, attorneys), for respondent-appellant.

## OPINION OF THE COURT

SULLIVAN, J.

Plaintiff, a manufacturer and importer of women's apparel, was insured with defendant against all risks of direct physical loss, except as excluded, under a "manufacturers output policy", which provided $125,000 in coverage at any one location at certain specifically designated locations, including its Van Brunt warehouse located in Elizabeth, New Jersey.

Plaintiff, primarily located at 85 Tenth Avenue, in New York City, operated its business out of a number of locations; in addition, it stored merchandise at various locations including the Van Brunt warehouse. The policy contained a limit of liability endorsement (No. 12), which increased the policy limit to $1,000,000 at two specified New York City locations, 85 Tenth Avenue and 512 Seventh Avenue, with respect to "blanket contents, loss of income, additional expense, valuable papers and records and EDP equipment." (These obviously referred to the basic coverage and various endorsements to the policy.) Not listed among the coverages in the increased limit of liability endorsement was the consequential damage provision which, by separate endorsement (No. 5—consequential loss and damage assumption clause), insured against consequential damage to plaintiff's property remaining in broken lots or ranges of sizes or colors after plaintiff sustained a direct loss.*

On February 21, 1985, within the period that the policy was in effect, a fire occurred at the Van Brunt warehouse, as a result of which 16,000 women's jackets were damaged. A loss claim was filed with defendant, which paid plaintiff $124,000, representing the policy limit applicable to that particular

---

* Insofar as is here pertinent, the consequential loss endorsement provided:

"This policy is extended to cover consequential damage to garments, on premises, including broken lots, sizes or color ranges, meaning * * * that if in consequence of any direct physical loss or damage insured herein a full lot or range of sizes or colors * * * if *[sic]* broken so as to reduce the value of the undamaged garments remaining in such lot or range, then this company will pay (subject to the liability limits stated herein * * *) * * *

"This company shall not be liable for more than the amount of this policy in respect to any one loss, disaster or casualty involving both direct and consequential damage, in respect to any one direct physical loss".

warehouse, less a $1,000 deductible. It is undisputed that plaintiff's direct loss exceeded the policy limit of $125,000. Plaintiff thereafter claimed that as a result of the damage caused by the fire at the Van Brunt warehouse to the 16,000 jackets, which were part of a 30,000 unit lot, the balance of the lot, consisting of 14,000 jackets stored at plaintiff's premises at 85 Tenth Avenue, were substantially lessened in value. Accordingly, it filed a second claim with defendant, claiming an additional loss of $231,474.85 in consequential damages with respect to these 14,000 jackets as to which, it maintained, the $125,000 limitation of liability in effect at the Van Brunt warehouse was inapplicable since these jackets were stored at a facility, i.e., 85 Tenth Avenue, where the limitation of liability had been increased to $1,000,000.

When defendant rejected plaintiff's claim, this action was commenced. It is not contested that a loss was sustained and that by consequence of the direct physical loss of goods stored at the Van Brunt warehouse, the value of the remainder of the lot stored at the 85 Tenth Avenue location was diminished. After joinder of issue, both sides moved for summary judgment. The only extrinsic evidence as to the policy's interpretation was contained in an affidavit submitted by the president of defendant's managing underwriter. He concluded that the consequential damage provision, endorsement No. 5, was meant to afford coverage for consequential damages only at the location of the actual loss. Other than this conclusory statement, there is, as both parties agree, no relevant evidence extrinsic to the policy which would bear on the intention of the parties. Plaintiff, on the other hand, argued that since the consequential loss endorsement contained no specific exclusion, the loss was covered. Finding the applicable policy provisions to be subject to varying interpretations, the court denied both motions. Since we find that the interpretation of the policy presents a pure question of law, without reference to extrinsic evidence, the case is appropriate for summary disposition, and we grant defendant's cross motion and dismiss the complaint.

The limit of liability endorsement which expanded the policy's coverage for two specifically designated locations incorporated by reference certain endorsements, i.e., loss of income (endorsement No. 1), additional expense (endorsement No. 2) and valuable papers and records (endorsement No. 3). Notably excluded from that list of specifically enumerated endorsements to which the expanded liability limit applied is

the consequential damage endorsement (No. 5). Therefore, the policy must be read as increasing the limit of liability to $1,000,000 at two specified locations as to the general all risks of direct physical loss coverage and certain endorsements on the policy only, i.e., those listed on the limit of liability endorsement.

A court may not create policy terms by implication or rewrite an insurance contract. *(Bretton v Mutual of Omaha Ins. Co.,* 110 AD2d 46, 49, *affd* 66 NY2d 1020.) Nor should a court reach to find an ambiguity where the policy language has a definite and precise meaning. *(Pergament Distribs. v Old Republic Ins. Co.,* 128 AD2d 760, 761, *lv denied* 70 NY2d 607.) "An insurer is entitled to have its contract of insurance enforced in accordance with its provisions and without a construction contrary to its express terms." *(Bretton v Mutual of Omaha Ins. Co., supra,* 110 AD2d, at 49.) To ignore the language in the limit of liability endorsement, which fails to specify the consequential damage endorsement in the list of endorsements to which the $1,000,000 liability limit applies, is to create an ambiguity where none exists. Since defendant has paid plaintiff the full amount of its policy limit with respect to the direct physical loss, i.e., $125,000 less the $1,000 deductible, it has no further liability.

In light of this analysis, it is unnecessary to address the issue of whether, as defendant argues, the term "on premises" in the consequential damage endorsement limits recovery to consequential damages sustained at the same location at which the direct physical loss occurred.

Accordingly, the order of the Supreme Court, New York County (Ethel B. Danzig, J.), entered June 9, 1988, denying plaintiff's motion and defendant's cross motion for summary judgment, should be modified, on the law, to grant the cross motion for summary judgment dismissing the complaint and, except as thus modified, affirmed, without costs or disbursements.

MURPHY, P. J., ROSS, ROSENBERGER and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on or about June 9, 1988, unanimously modified, on the law, to grant the cross motion for summary judgment dismissing the complaint and, except as thus modified, affirmed, without costs and without disbursements.