FSP, INC. f/k/a Cowen Incorporated, Plaintiff–Appellee,

v.

**SOCIÉTÉ GÉNÉRALE, Defendant–Appellant.**

Docket No. 03–7059.

United States Court of Appeals, Second Circuit.

Argued: May 29, 2003.

Decided: Nov. 12, 2003.

---

Edward M. Spiro, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York, N.Y. (Jay Goldberg, Jay Goldberg, P.C., New York, NY, on the brief), for Plaintiff–Appellee.

Daniel M. Mandil, Covington & Burling, New York, N.Y. (Michael Winger, on the brief), for Defendant–Appellant.

Before: CALABRESI and SACK, Circuit Judges, and GARAUFIS, District Judge.*

GARAUFIS, District Judge.

Defendant Société Générale ("SG") appeals from a decision and order of the United States District Court for the Southern District of New York (Daniels, *J.*) denying its motion to stay this action in favor of arbitration, pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. SG contends that the counterclaims it has asserted against plaintiff FSP, Inc. ("FSP") implicate FSP's exchange-related activities and should therefore be arbitrated pursuant to the rules of the New York Stock Exchange ("NYSE" or "Exchange"), of which FSP is a member. We affirm based on the record before us, but remand for further consideration in light of the claims made in SG's answer, which the District Court did not have when it decided the motion to stay.

## I. BACKGROUND

FSP, formerly known as Cowen Inc., is the general partner of Financial Square Partners, L.P., formerly known as Cowen & Co. ("Cowen"). In February 1998, SG and FSP executed an Acquisition Agreement by which SG acquired substantially all of the investment banking and brokerage business of Cowen.[1] Pursuant to the Acquisition Agreement, SG assumed certain liabilities and agreed to indemnify and defend FSP against losses resulting from the assumed liabilities. The Acquisition Agreement also states that if a dispute arises concerning the obligation to indemnify and defend, and if the parties cannot resolve that dispute amicably, "any party may institute suit against the other party

---

* The Honorable Nicholas G. Garaufis, United States District Judge for the Eastern District of New York, sitting by designation.

1. The parties to the Acquisition Agreement were actually Cowen Inc. and Cowen & Co., as sellers, and SG, as purchaser. For the sake of clarity we refer to the general partner,

Cowen Inc., by its current name, FSP, and we refer to Cowen & Co., the limited partnership that was a member of the Exchange, as Cowen. The parties do not dispute that FSP is bound by the constitution and rules of the NYSE concerning the issues raised in this appeal.

in the United States District Court located in New York, New York, to resolve the matter." Acquisition Agreement § 10.4. Just such a dispute has arisen in this case.

In January 2002, it was revealed that a broker named Frank Gruttadauria committed multiple acts of securities fraud while employed by Cowen. Soon after these revelations came to light, multiple lawsuits alleging, *inter alia*, common law fraud and violations of federal and state securities laws were filed against various entities that employed Gruttadauria, including FSP.[2] FSP then wrote to SG claiming a right to indemnification and defense pursuant to the terms of the Acquisition Agreement. SG responded by suggesting that it may not be required to indemnify FSP against losses attributed to Gruttadauria's fraud if FSP "knew or recklessly avoided knowledge (through faulty procedures or otherwise) of Mr. Gruttadauria's improper activities." SG did not dispute, however, that the losses for which FSP might become liable as a result of the lawsuits were within the definition of assumed liabilities under the Acquisition Agreement and therefore would be within the scope of its indemnity provisions.

FSP then filed a declaratory judgment action in the District Court, seeking a declaration that SG is bound to indemnify and defend FSP in connection with the Gruttadauria-related lawsuits. Before filing an answer, defenses or counterclaims, SG moved to stay that action in favor of arbitration, pursuant to § 3 of the FAA.[3] It argued that, because FSP was a member of the Exchange, by virtue of its ownership

of Cowen, and because SG's own defense to the claims of indemnification and defense implicate FSP's exchange-related conduct, the rules and constitution of the NYSE mandate arbitration of the indemnification and defense claims. SG also argued in the District Court that even if its dispute with FSP is not exchange-related, its allegation of FSP's misconduct in failing to uncover Gruttadauria's fraud places in issue FSP's business practices, which is sufficient to bring this dispute within the mandatory arbitration rules of the Exchange. *See FSP, Inc. v. Société Générale*, No. 02–CV–4786, 2003 WL 124515 at 1–2, 2003 U.S. Dist. LEXIS 493, at *4–5 (S.D.N.Y. Jan. 14, 2003).

FSP argued that the instant dispute is simply one of contract interpretation, as SG's obligation to defend and indemnify arises out of the Acquisition Agreement. Moreover, FSP asserted that § 10.4 of the Acquisition Agreement evinces the parties' intent to have indemnification-related disputes resolved in a judicial forum.

The District Court denied the motion to stay, finding that the parties' dispute does not concern exchange-related business. Rather, it found that "[t]his is simply a contractual dispute wholly separate and apart from plaintiff's exchange-related activities." *Id.* at 3, 2003 U.S. Lexis 493 at *7–8. Notably, however, the District Court did not have the benefit of SG's answer, which may contain more specific facts or claims concerning FSP's alleged misconduct. SG appeals the denial of the motion to stay.

---

**2.** The lawsuits also name SG as a defendant, as it continued to employ the stockbroker after acquiring Cowen.

**3.** SG also moved to dismiss the action under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, to the extent FSP sought a

declaration concerning SG's obligation to defend FSP against unfiled claims or indemnify it for losses that had not been incurred. The District Court's order granting that part of the motion has not been appealed.

## II. DISCUSSION

■ We review a district court's denial of a motion to stay an action in favor of arbitration *de novo*. *In re Salomon Inc. Shareholders' Derivative Litig.,* 68 F.3d 554, 557 (2d Cir.1995).

### A. The "Exchange–Related" Requirement

■ Although the FAA expresses a strong federal policy favoring arbitration, *see Oldroyd v. Elmira Sav. Bank, FSB,* 134 F.3d 72, 76 (2d Cir.1998), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *see also Bell v. Cendant Corp.,* 293 F.3d 563, 566 (2d Cir.2002). SG argues that the constitution and rules of the Exchange, which bind FSP, provide the requisite arbitration agreement in this case.

The constitution of the NYSE provides in relevant part, "any controversy between a member . . . and any other person arising out of the business of such member . . . shall at the instance of any such party, be submitted for arbitration." NYSE Const. art. XI, § 1. Furthermore, Rule 600(a) of the NYSE Arbitration Rules provides that "[a]ny dispute, claim or controversy between a . . . non-member and a member . . . arising in connection with the business of such member . . . shall be arbitrated under the Constitution and Rules of the New York Stock Exchange . . . upon the demand of the . . . non-member." These provisions are "sufficient in and of themselves to compel arbitration of covered disputes under § 3 [of the FAA]." *Paine, Webber, Jackson & Curtis, Inc. v. Chase Manhattan Bank, N.A.,* 728 F.2d 577, 580 (2d Cir.1984). Non-members of the Exchange may invoke these rules in certain cases as third party beneficiaries. *See Spear, Leeds & Kellogg v. Central Life Assur. Co.,* 85 F.3d 21, 26 (2d Cir.1996) (stating that "decisional law recognizes that the FAA requires the enforcement of an arbitration agreement not just in favor of parties to the agreement, but also in favor of third party beneficiaries of the members' agreement to abide by the Exchange's Constitution and Rules when they join the NYSE").

This Court has, on several occasions, considered whether a particular dispute is "covered" by the Exchange's constitution and rules. We have held that when a member of the Exchange accuses a non-member of wrongdoing, the non-member may compel arbitration of that dispute only when the dispute arises "out of the member's exchange-related business." *Paine, Webber,* 728 F.2d at 580. The difference in this case is that the member, rather than the non-member, is being accused of wrongdoing. We have expressly left open the question of whether the underlying dispute in a case such as this, where it is the member's conduct at issue, also must be "exchange-related". *See id.* at n. 5 ("We wish to note that we are not deciding today whether a non-member could compel arbitration of a dispute in an action in which the alleged wrongdoer is an exchange member and the transaction is not related to exchange business. We acknowledge that, depending on the facts, such a situation might come within the purview of an arbitration agreement adopted in light of the Congressional mandate to exchanges of self-regulation.").

In *Haviland v. Goldman, Sachs & Co.,* 947 F.2d 601 (2d Cir.1991), plaintiff, a member of the NYSE, accused a non-member affiliate of Goldman Sachs of wrongdoing. The affiliate's motion to stay the action in favor of arbitration was denied by the district court, and this Court

affirmed, based on the absence of an exchange-related dispute. We noted in passing that if the non-member affiliate had alleged misconduct by the plaintiff a broader reading of the arbitration rules may be warranted, because of the "Exchange's interest in the business conduct of its members." *Id.* at 607. In that case, however, it was not necessary to decide that question, because "no misconduct by [the plaintiff] has been put in issue." *Id.*

In a more recent case where, like the present case, a non-member accused a member of misconduct, this Court reversed the district court's grant of a preliminary injunction enjoining arbitration, because the underlying dispute was exchange-related. *See Spear, Leeds & Kellogg,* 85 F.3d at 23. In light of that finding, we declined to decide whether the exchange-related requirement ought to apply generally in cases where the non-member alleges misconduct by the member. *See id.* at 29.

### B. The Instant Appeal

■ On appeal, SG, not a member of the Exchange, argues that its dispute with FSP is exchange-related to the extent that SG's contractual obligation to defend and indemnify depends upon whether FSP bears any responsibility for the fraud committed by Gruttadauria through its own misconduct in supervising him or in failing to uncover his fraud. Alternatively, SG argues that even if this dispute is not exchange-related, its allegations concerning FSP's wrongdoing and possible culpability are sufficient to implicate the interests of the NYSE and fall within its arbitration provisions.

As noted earlier, at the time the District Court decided the motion to stay it did not

have the benefit of SG's answer, which might have put in issue facts or claims that could trigger the NYSE arbitration provisions. We therefore remand to the district court for further consideration of whether these new alleged facts render the dispute between SG and FSP "exchange-related." If the dispute is in fact "exchange-related," the district court will stay the action in favor of arbitration.

As to SG's other argument, on the record before us it appears that SG's claims of possible misconduct by FSP are generalized and somewhat vague. During oral argument in the District Court, for example, SG asserted that under both New York and federal law, it would not be obligated to indemnify FSP for losses resulting from FSP's own fraud. That may be so, but SG did not provide the District Court with any specific factual basis [4] upon which it could find that FSP engaged in any fraudulent conduct.

In its brief before this Court, SG cites *Nomura Securities Int'l, Inc. v. Citibank, N.A.,* 81 N.Y.2d 614, 601 N.Y.S.2d 448, 619 N.E.2d 385 (1993) for the proposition that claims of misconduct against a member of the Exchange should be arbitrated whether or not such claims are exchange-related. Although the New York Court of Appeals decided that case based on Second Circuit precedent, the non-member in that case first filed a statement of claim demanding arbitration before the NYSE. *See id.* at 617, 601 N.Y.S.2d 448, 619 N.E.2d 385. In making its ruling, therefore, the Court of Appeals had a more complete picture of the claims at issue than the District Court had in this case when it decided the motion to stay. Because the issue of the meaning and applicability of *Nomura Securities* may not arise on remand, we do not offer

---

4. We note that Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

an opinion as to whether, as the New York Court of Appeals held, some non-exchange-related claims of misconduct by a nonmember against a member may be required to be arbitrated. We leave it to the District Court, should the issue arise, to make that determination in the first instance in light of the factual allegations contained in all the pleadings.

SG also argues that the District Court erred in finding that Section 10.4 of the Acquisition Agreement manifests the parties' intent to have indemnification-related disputes resolved in court. *See FSP, Inc.,* at 3–4, 2003 U.S. Dist. LEXIS 493, at \*10. As noted above, Section 10.4 states that when indemnification-related disputes cannot be resolved amicably, "any party may institute suit against the other party in the United States District Court located in New York, New York, to resolve the matter." SG contends that this provision merely permits, but does not require, an action in the district court to resolve disputes concerning the right of indemnification. According to SG, the quoted language ought to be construed as permitting suit in the district court when arbitration is not otherwise mandated, as it is in this case. Without taking any position on this contention, we will also give the District Court an opportunity to examine this provision in the context of the nature of the dispute as it now appears from all the pleadings.

### III.  CONCLUSION

For the foregoing reasons, we affirm the District Court's order denying the motion to stay and remand for further consideration in light of additional pleadings that were not available when the motion was first decided.