**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3864
_____

ROBERT D. REDMOND,
                                    Appellant

v.

ACE AMERICAN INSURANCE COMPANY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(No. 1-13-cv-01658)
District Judge: Hon. Leonard P. Stark
_____

Submitted Under Third Circuit LAR 34.1(a)
June 4, 2015
_____

Before: FISHER, JORDAN, and SHWARTZ, Circuit Judges.

(Filed: June 5, 2015)
_____

OPINION*
_____

SHWARTZ, Circuit Judge.

     Robert D. Redmond sued ACE American Insurance Company ("ACE") after it

refused to provide insurance coverage in connection with a civil suit Redmond's former

_____
     * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

employer brought against him. The District Court dismissed Redmond's complaint because the language of the insurance policy under which he sought coverage excluded his claim. We agree and will affirm.

I

Industrial Enterprises of America, Inc. ("IEAM") purchased a "Management Protection" insurance policy (the "Policy") from ACE. App. 76. The Policy provided insurance coverage for the "Company," defined as IEAM, its subsidiaries, "any such organization as a debtor-in-possession," as well as "Insured Persons," including IEAM executives. App. 77-78. Subject to certain conditions and exclusions, the Policy required ACE to cover losses arising from, among other things, "misleading statement[s]" and other "act[s and] omission[s]," by the insureds and to pay costs "arising out of" civil proceedings related to such acts. App. 77-78, 80. The Policy also included an "insured versus insured" exclusion (the "Exclusion"), under which ACE was not liable for losses arising from any "[c]laim brought or maintained by, on behalf of, or in the right of . . . the Company, in any respect." App. 81.

During the relevant time, Redmond was an "Insured Person" under the Policy. In November 2007, shareholders sued IEAM for securities violations and accounting fraud. In 2009, IEAM filed for bankruptcy protection, and in 2011, brought an adversary proceeding (the "Adversary Proceeding") in bankruptcy court against several former executives and employees, including Redmond. Acting as a debtor-in-possession, IEAM sought damages "on behalf of itself and as assignee of its shareholders," App. 114, alleging that the defendants, including Redmond, had engaged in a fraudulent scheme to

2

manipulate the company's stock price. In 2013, a Chapter 11 trustee was appointed to pursue IEAM's claim.

Redmond asked ACE "to provide his defense in the matter" or otherwise cover his costs. App. 11. ACE denied Redmond's request, and Redmond sued ACE in Delaware state court, alleging that ACE had breached its contractual obligations under the Policy, acted "in bad faith," App. 13-14, and "wrongfully conspired with IEAM . . . to deny [him] his right to coverage of his defense costs," App. 19. ACE removed the case to the District Court, and moved to dismiss Redmond's complaint, citing the Exclusion. The District Court held that the Exclusion relieved ACE of its obligation to assume the cost of Redmond's defense and dismissed his complaint. Redmond appeals.

## II[1]

"Under New York law, an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract."[2] Morgan Stanley Grp. Inc. v. New Eng. Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000) (quotation marks omitted). This "is a matter of law for the court to decide," and requires us to determine,

---

[1] We have jurisdiction under 28 U.S.C. § 1291. The District Court had jurisdiction under 28 U.S.C. § 1332. We review the District Court's dismissal de novo and apply the same standard as the District Court. See Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014). Under this standard, we accept all facts alleged in Redmond's complaint as true, construe them in the light most favorable to him, id., and determine whether the complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

[2] As the parties agree that New York law applies, we need not undertake a choice-of-law analysis. See Williams v. BASF Catalysts LLC, 765 F.3d 306, 316-17 (3d Cir. 2014).

in the first instance, "whether the terms of the insurance contract are ambiguous." Id. (quotation marks omitted). As stated in Morgan Stanley,

> [a]n ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

Id. (quotation marks omitted). Put differently, policy language is not ambiguous if it has a "definite and precise meaning, unattended by danger of misconception in the purport of the policy itself, and concerning which there is no reasonable basis for a difference of opinion." Breed v. Ins. Co. of N. Am., 385 N.E.2d 1280, 1282 (N.Y. 1978).

As ACE seeks to "negate coverage by virtue of an exclusion," we must also ensure that the language at issue is "clear and unmistakable [and] is subject to no other reasonable interpretation." Throgs Neck Bagels, Inc. v. GA Ins. Co. of N.Y., 241 A.D.2d 66, 71 (N.Y. App. Div. 1998). If we conclude that it is not, or that it is ambiguous, the Exclusion "must be interpreted in favor of the insured." Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995). If the language is "clear and unambiguous," however, we must "enforce [it] as written." Id.

Here, the Exclusion provides that ACE shall not be liable for losses arising from any "[c]laim brought or maintained by, on behalf of, or in the right of . . . the Company, in any respect." App. 81. Generally speaking, a claim or proceeding is "brought when in law it is commenced," Goldenberg v. Murphy, 108 U.S. 162, 163 (1883),[3] and the same

_____

[3] See also Burns v. Equitable Life Assurance Soc'y of the U.S., 696 F.2d 21, 22-23 (2d Cir. 1982) (holding that the phrase "bring a civil action" as used in a federal

4

holds true in the policy exclusion context, see Am. Cas. Co. of Reading, Pa. v. FDIC, 16 F.3d 152, 154 (7th Cir. 1994) (holding that the FDIC "unquestionably 'brought'" an action within the meaning of the applicable policy exclusion when it "commenced suit"); Levy v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 889 F.2d 433, 434 (2d Cir. 1989) (holding that a policy exclusion including the "brought by" language "contain[s] no ambiguity"). Thus, the phrase "brought . . . by" as used in the Exclusion means "commence" and is not ambiguous.

Having so concluded, we apply the Exclusion "as written." Sylvan Beach, 55 F.3d at 115. Here, IEAM, the insured "Company," commenced the Adversary Proceeding against Redmond, another insured. Under the Exclusion, ACE is not liable for suits commenced, or "brought," by the "Company," and thus it is not obligated to cover Redmond's defense costs. The fact that the Chapter 11 trustee has been substituted as the plaintiff in the action under Fed. R. Bankr. P. 2012(a) and is now pursuing the action on behalf of IEAM does not mean the trustee initiated the suit or change the fact that IEAM commenced, or "brought," the action. While the action now "proceeds as if it had been originally commenced by the real party in interest," Fed. R. Civ. P. 17(a)(3) (incorporated by Fed. R. Bankr. P. 7017), this does not change the fact that IEAM "brought" it. Thus, the plain language of the Exclusion allows ACE to deny Redmond's request for defense costs, and the District Court did not err in dismissing Redmond's complaint.

---

statute means "to commence" such an action); Black's Law Dictionary (10th ed. 2014) (defining "bring an action" as "[t]o sue; institute legal proceedings").

## III

For the foregoing reasons, we will affirm the order of the District Court dismissing Redmond's complaint.